UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**THOMAS K.,**

**Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:22-cv-00673-TPK

OPINION AND ORDER

## OPINION AND ORDER

This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for supplemental security income. That final decision was issued by the Appeals Council on July 7, 2022. Plaintiff has now moved for judgment on the pleadings (Doc. 10) and the Commissioner has filed a similar motion (Doc. 11). For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Commissioner.

### I.  BACKGROUND

Plaintiff protectively filed his application for benefits on July 16, 2019, alleging that he became disabled on July 10, 2017. After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on January 20, 2021. Plaintiff and a vocational expert, Francesco Fazzolari, both testified at the hearing.

The ALJ issued an unfavorable decision on March 19, 2021. He found, first, that Plaintiff had not engaged in substantial gainful activity since his application date. Next, he determined that Plaintiff had severe impairments including degenerative disc disease/spondylosis in the lumbar spine, degenerative disc disease/spondylosis in the thoracic spine with herniated nucleus pulposus, De Quervain's tenosynovitis in the right hand/wrist, obesity, bipolar disorder, and anxiety disorder. However, he also determined that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff could perform a reduced range of light work. However, he could not climb ladders, ropes, or scaffolds, could only occasionally climb ramps or stairs, and could occasionally stoop, kneel, crouch, or crawl. Additionally, Plaintiff could occasionally handle with his right hand. From a psychological viewpoint, the ALJ found that Plaintiff was limited to simple and routine tasks, could sustain concentration, persistence, and pace for two-hour intervals during a workday,

could have only occasional interaction with others, could set realistic goals and make plans independent of others, and could tolerate occasional changes in routine work settings such as hours of work, break and lunch periods, work processes, and performance expectations.

     Plaintiff had no past relevant work to consider.  Given Plaintiff's limitations, and based on the testimony of the vocational expert, the ALJ determined that Plaintiff could do unskilled light jobs like cleaner/housekeeper, laundry worker, and price marker.  He also concluded that these jobs existed in significant numbers in the national economy.  As a result, the ALJ determined that Plaintiff was not under a disability as defined in the Social Security Act.

     In his motion for judgment on the pleadings, Plaintiff raises these issues, stated here *verbatim*:

> 1.  Did the ALJ rely on stale opinion evidence and lay interpretation of evidence following a worsening in Plaintiff's condition?
>
> 2.  Did the ALJ improperly rely on vocational expert testimony without resolving conflicts between the DOT and vocational expert testimony?
>
> 3. Did the ALJ fail to evaluate and assess an opinion from Dr. Cardamone?

Plaintiff's memorandum, Doc. 10-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

     Plaintiff, who was 50 years old at the time of the hearing, first testified that he had obtained his G.E.D. and that he was currently homeless.  He had last worked in 2017 doing carpet installation and lifted 20 to 30 pounds in that job.  Plaintiff said he could no longer work because of back problems.  He did not take anything for his back pain, though, but was taking medication for bipolar disorder.  Plaintiff believed he could sit for 15 minutes before changing positions and could stand and walk for about the same amount of time.  He could climb stairs but it was painful, and if he had to work for eight hours, he would need a break every 15 minutes.  Postural activities like bending, stooping, crouching, and squatting were all painful as well, as was overhead reaching.

     When asked about his memory, Plaintiff said that it was not very good, nor was his attention and concentration.  He also reacted to stressful situations.  Plaintiff further testified that he would be unable to keep a regular schedule.  However, he was able to function on a daily basis if he took his medications, but he still had anxiety and panic attacks.  He also said he had

never gotten along well with coworkers or supervisors. Most of the day he spent watching television. Lastly, he said that his pain had gotten worse since being in a bus accident in 2019.

The other witness at the hearing was the vocational expert, Mr. Fazzolari. He first testified that Plaintiff's past work as a carpet installer was skilled and, as Plaintiff performed it, done at the medium exertional level. The expert was then asked questions about a person with Plaintiff's vocational profile who could work at the light exertional level with a number of postural limitations and manipulative restrictions including being able to handle occasionally with his right arm. Also, the person could do only routine, simple tasks while being able to sustain concentration, persistence, and pace for two-hour intervals during a workday. That person could also occasionally interact with others, and could deal with occasional changes in the workplace. In response, he said that such a person could not do Plaintiff's past work but could do light jobs like cleaner, laundry worker, or price marker, and he gave numbers for those jobs as they existed in the national economy.

Next, Mr. Fazzolari was asked to assume that the person in question could not climb ladders, ropes, or scaffolds but could climb ramps and stairs occasionally, and could only occasionally stoop, kneel, crouch, or crawl. He said that these restrictions were compatible with the jobs he identified. He also said that his testimony was consistent with the Dictionary of Occupational Titles except that he reduced the number of jobs to accommodate someone with restrictions on the use of his right arm, making that reduction on the basis of his personal experience. Lastly, he testified that being off task more than 10% of the time would preclude employment, as would being absent one or two days per month on a consistent basis.

### B. Medical Evidence

The relevant medical evidence is well-summarized in Plaintiff's memorandum, *see* Doc. 10-1 at 7-12, and the Court will set out the highlights of that summary here. Tests done in 2017 showed that Plaintiff had degenerative changes in his cervical and thoracic spines. Plaintiff was treated for a physical condition affecting his right hand beginning in 2019, which was first diagnosed as tenosynovitis, and later diagnoses of arthritis and carpal tunnel syndrome were added. He was given medication and a brace and told to use his hand only as tolerated. Treatment for hand pain continued throughout 2019 and 2020 with little change.

Also in 2019, Plaintiff was seen after being involved in a bus accident, which happened in October. He was undergoing chiropractic care and doing home exercises. A note from 2020 showed that he was reporting neck pain radiating into his left hand as well as constant low back pain. Prior testing revealed disc herniations in the cervical, thoracic, and lumbar spines as well end plate fractures in the thoracic and lumbar spines. It was recommended that he continue with chiropractic treatment as long as it was helping and that he should avoid aggravating activities. His complaints of back pain continued into 2021.

### C. Opinion Evidence

Dr. Dave conducted a consultative internal medicine examination on October 8, 2019. Plaintiff described pain in his right hand and said he also was in remission for a substance abuse disorder. On examination, his gait was normal and he could rise from a chair without difficulty. There was tenderness in the right hand. Otherwise, the examination was essentially normal. Dr. Dave's diagnoses included right thenar eminence pain and she thought there would be mild to moderate limitations for repetitive gross motor manipulation of large or heavy objects with the right hand. (Tr. 870-73).

Also on October 8, 2019, Dr. Ransom, a psychologist, performed a consultative psychiatric examination. Plaintiff told her that he had been treated for anxiety and depression since 2014 but that his medication and counseling regimen was fairly effective. She observed that Plaintiff's attention and concentration were intact as was his immediate, recent, and remote memory. Dr. Ransom listed a number of moderate mental limitations which she believed were secondary to his substance dependence with moderate cravings. (Tr. 864-68).

In a letter dated December 3, 2019, Plaintiff's chiropractor noted that his examination of Plaintiff after the bus accident showed significant limitations and pain with range of motion in both the cervical and lumbar spines and that the herniations and end plate fractures shown on studies were relatable to the bus accident. He did not believe that Plaintiff had returned to his physical status which existed prior to the accident and that his injuries had resulted in "some degree of permanency." (Tr. 1558-59). Whether this letter constitutes an actual opinion as to Plaintiff's functional capacity will be discussed further below.

There are also state agency reviewer opinions in the record. Dr. Koenig reviewed the records up through October 10, 2019, and found that Plaintiff could do light work but could only climb ladders, ropes, and scaffolds occasionally and could do only occasional handling with his right hand. Dr. Baronos, the other state agency reviewer, stated in an opinion dated June 10, 2020, that Plaintiff could do light work with the same postural limitations and also had limitations on the use of his right hand for gross manipulation - essentially the same opinion as expressed by Dr. Koenig. (Tr. 100-02).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence,

considering the record as a whole, to support the Commissioner's decision and if
the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108,
112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings
of the Commissioner of Social Security as to any fact, if supported by substantial
evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112
(quotation marks omitted). "It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Id*. (quotation marks omitted
and emphasis added). But it is still a very deferential standard of review—even
more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S.
150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence
standard means once an ALJ finds facts, we can reject those facts "only if a
reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29
F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted);
*see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same
standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

### A.  Stale and Insubstantial Evidence

In his first claim of error, Plaintiff contends that, first, the opinion evidence relied on by the ALJ was stale because the bus accident, which Plaintiff believes to have aggravated his condition, happened after the consultative physical evaluation. He concedes that the later state agency opinion, the one issued by Dr. Baronos, post-dated the accident, but he points out that Dr. Baronos did not appear to have reviewed the latest MRI or the treatment Plaintiff received after the accident and simply confirmed the earlier opinion of Dr. Koenig. Under these circumstances, Plaintiff argues that the ALJ must have improperly interpreted the raw medical data generated after the bus accident when formulating the residual functional capacity finding. In response, the Commissioner argues that the ALJ properly relied on the three medical opinions of record and that the medical findings made after the bus accident were not significantly different from the ones that preceded it. The Commissioner also points out that the ALJ imposed additional postural restrictions to account for Plaintiff's subjective complaints of back pain and associated limitations.

The central point made by Plaintiff is that the record demonstrates a worsening of his back condition after the bus accident, to the point where the additional postural restrictions added by the ALJ to the medical opinions of record were insufficient to account for the aggravation that occurred and were not based on any medical evaluation of the medical data

generated after the accident. The Court disagrees. As to the latter point concerning Dr. Baronos, although that opinion did not cite to any medical opinions which post-date the bus accident, that does not necessarily mean that he did not consider the medical treatment records generated after that date. In fact, he specifically mentioned, in his opinion, a medical record from March of 2020 dealing with Plaintiff's right thumb pain. *See* Tr. 102. It therefore cannot be assumed that his opinion is based solely on pre-accident records, and the ALJ was entitled to rely on that opinion in determining Plaintiff's residual functional capacity even after October of 2019.

Further, as the Commissioner correctly points out, the records do not compel a reasonable person to conclude that Plaintiff's condition was materially different after the bus incident (which appears to have consisted of the bus making a sudden stop and then striking a vehicle in front of it). Plaintiff saw his nurse practitioner at Pinnacle Orthopedic & Spine Specialists on December 13, 2019, and reported some soreness in his neck, mid-back, and lower back after getting off the bus. On examination, he walked with a normal gait, had no difficulty standing from a seated position, did not demonstrate any tenderness in his back, had good range of motion and normal strength, and straight leg raising was negative on both sides. X-rays showed little more than loss of disc space in the cervical and lumbar spines. NSAIDs were recommended for pain and he was to continue chiropractic treatment. Finding from a March 13, 2020 examination were much the same, and at an office visit with a different nurse practitioner on March 11, 2020, he had normal range of motion in all his joints. From these records and from the fact that Dr. Baronos's opinion presumably took their findings into account, the ALJ was entitled to determine that his opinion could be deemed persuasive. The fact that the ALJ added some additional limitations is favorable to Plaintiff and therefore does not constitute reversible error. *See Paul W. H. v. Comm'r of Soc. Sec.*, 2022 WL 1913281, at *6 (W.D.N.Y. June 3, 2022)("'The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a [...] limitation in the RFC assessment is not grounds for remand,'"), *quoting Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (*citing Baker v. Berryhill*, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018)).

### B. Conflict with the DOT

In his second claim, Plaintiff notes, first, that all three of the jobs identified by the vocational expert require, according to the Dictionary of Occupation Titles, either frequent or constant handling. Further, the DOT does not specify that the handling can be done other than bilaterally. Plaintiff therefore argues that there was a conflict between the expert testimony and the DOT which was not adequately resolved on the record. The Commissioner, on the other hand, contends that there was no actual inconsistency based on the fact that the expert specifically testified that the number of available jobs would be reduced by one-half to accommodate Plaintiff's manipulative limitation and that he based this answer on his professional experience.

The actual dialogue between the ALJ and the vocational expert on this topic went like

this:

>A: [After identifying three jobs] ... I'm able to classify three positions. I will be reducing the numbers by one half to accommodate the right upper extremity restriction you've imposed....
>
>\*\*\*
>
>Q: Okay. And you said that you mentioned – you mentioned reducing the numbers by half. On what basis did you do that for?
>
>A: That's based on my professional experience, as the D.O.T. does not delineate right versus left extremities.
>
>Q: And so based on your experience, someone could perform these three jobs with occasional handling the right extremity?
>
>A: Yes, your honor. ...

(Tr. 71-72). The expert then reiterated that his testimony comported with the D.O.T. and was based on, among other things, his "professional experience regarding the upper extremities...." *Id*. Plaintiff's counsel did not question the expert on this or any other aspect of his testimony.

    The general principle upon which Plaintiff relies - that there must be some indication that a vocational expert not only identifies a conflict between his or her testimony and the D.O.T. but explains on what basis the conflict has been resolved - is set forth in *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87 (2d Cir. 2019), and has been utilized by this Court on several occasions to support a remand for further proceedings. *See, e.g., Robert A.B. v. Comm'r of Soc. Matthew M. v. Comm'r of Soc. Sec.*, 2022 WL 3346949 (W.D.N.Y. Dec. 10, 2024); *Matthew M. v. Comm'r of Soc. Sec.*, 2022 WL 3346949 (W.D.N.Y. Aug. 12, 2022). In both of those cases, although the expert may have acknowledged the conflict, he or she did not explain why his or her testimony was the more reliable basis for determining whether someone with the claimant's limitations could do the job. On the other hand, in decisions such as *Barbara W. v. Comm'r of Soc. Sec.*, 2025 WL 276668 (W.D.N.Y. Jan. 23, 2025), *Aracelis N.-B. v. Comm'r of Soc. Sec.*, 2024 WL 4647610, \*5 (W.D.N.Y. Nov. 1, 2024), and *Alisa O. v. Comm'r of Soc. Sec.*, 2021 WL 3861425 (Aug. 30, 2021), the Court found the vocational testimony to be sufficient when the expert indicated knowledge of how the jobs in question were performed and said, based on experience, that someone who had a particular physical limitation could do either all or some percentage of them.

    The testimony given in this case meets the first part of the *Lockwood* test in that the

expert clearly identified the exact conflict between his testimony and the job descriptions provided in the D.O.T. As to the second part, while it may have been better for him to say explicitly that he had personally observed people doing these jobs, he did explain why he believed that a person with a right hand manipulation restriction could do half of them, and he said that was based on his experience not just as a vocational expert but with the upper extremities. That testimony is enough, in the Court's view, to permit the ALJ to have relied on it as substantial evidence for the finding that someone with the residual functional capacity attributed to Plaintiff could do a substantial number of jobs. This second argument therefore does not support a remand.

### C. Dr. Cardamone's Opinion

Plaintiff's final contention is that the ALJ did not properly evaluate the opinion of his chiropractor, Michael Cardamone. As noted above, while not particularly specific, that opinion included a reference to restricted range of motion in the spine and to a degree of permanency to Plaintiff's injuries. However, the ALJ's decision does not discuss this opinion, which Plaintiff claims to be error. The Commissioner argues, however, that the ALJ did note that he had reviewed the letter, that a chiropractor is not an acceptable medical source, and that the letter does not demonstrate any level of impairment greater than the ALJ included in his residual functional capacity finding.

It is true that the ALJ did not explicitly discuss the letter in question when he attributed persuasiveness to the various medical opinions of record, mentioning only that Plaintiff had consistently received care from the Cardamone Chiropractic Clinic, but correctly referring to the exhibit (Ex. 25) which contains the letter. (Tr. 28). It is also true that this letter does not contain any specifics as to work-related limitations such as restrictions on the ability to sit, stand, walk, lift, carry, or engage in various work-related postures like stooping, kneeling, crouching, crawling, bending, or twisting. It is therefore understandable that the ALJ did not view this letter as requiring analysis as an opinion. Further, as this Court has said, **"[b]ecause chiropractors are not acceptable medical sources, the ALJ was not required to assess the persuasiveness [a chiropractor's] opinion under the regulatory factors"** which are to be applied to medical opinions under 20 C.F.R. §404.1527. *Julia K. v. Comm'r of Soc. Sec.*, 2024 WL 3760344, at *6 (W.D.N.Y. Aug. 9, 2024). The Court therefore perceives no error in the way in which the ALJ dealt with this particular item of evidence.

### V. CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 10), **GRANTS** the Commissioner's motion (Doc. 11), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**
